UNITED STATES DISTRICT COURT **FILED**
FOR THE **SCRANTON**
MIDDLE DISTRICT OF PENNSYLVANIA FEB 2 1 2012

PER _____
DEPUTY CLERK

RODNEY P. BURDA          :
                        :
          Plaintiff     :     No. 4:10-CV-2521
                        :
     vs.                :     (Complaint Filed 12/10/10)
                        :
MICHAEL J. ASTRUE,      :
COMMISSIONER OF SOCIAL  :     (Judge Kosik)
SECURITY,               :
                        :
          Defendant     :

## MEMORANDUM AND ORDER

February 21, 2012

## BACKGROUND:

The above-captioned action is an appeal pursuant to 42 U.S.C. §405(g) and 42

U.S.C. §1383(c)(3) seeking review of a decision of the Commissioner of Social

Security ("Commissioner") denying Plaintiff Rodney P. Burda ("Burda") social

security disability benefits.   For the reasons set forth below, we will remand for

further proceedings.

Disability insurance benefits are paid to an individual if that individual is

disabled and "insured;" that is, the individual has worked long enough and paid social

1

security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."   It is undisputed that Burda met the insured status requirements of the Social Security Act through June 30, 2011.   Tr. 14.[1]

Burda was born in the United States on March 1, 1973[2].   Tr. 99.   Burda graduated from high school. Tr. 73.   Burda is able to read, write, speak and understand English.   Burda has prior relevant[3] work as a U.S. Navy hospital corpsman, which is semi-skilled, heavy work; he also had other biomedical work experience that was medium work.[4]   Tr. 73-74 .

---

1.   References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on February 14, 2011.

2.   Burda will turn 39 years old on March 1, and is considered to be a "younger individual" under the Social Security regulations.   The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."   20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

3.   Past relevant work experience in the present case means work performed by Burda in the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.   20 C.F.R. §§ 404.1560 and 404.1565.

4.   The terms sedentary, light, medium and heavy work are defined in the Social Security regulations as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small

tools.   Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work.   Light work involves lifting no more than 20 pounds at a time  with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as   loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work.   Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.   If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) Heavy work.   Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567.

His earnings from 1988 through 2006 are as follows:

| Year | Amount |
|------|--------|
| 1988 | $  1,433.32 |
| 1989 | 725.33 |
| 1990 | 0.00 |
| 1991 | 0.00 |
| 1992 | 6,492.96 |
| 1993 | 6,817.26 |
| 1994 | 4.517.73 |
| 1995 | 8,689.81 |
| 1996 | 12,367.15 |
| 1997 | 14,254.80 |
| 1998 | 15,217.20 |
| 1999 | 16,300.80 |
| 2000 | 18,578.10 |
| 2001 | 20,728.80 |
| 2002 | 28,916.60 |
| 2003 | 2,432.00 |
| 2004 | 32,507.57 |
| 2005 | 31,758.65 |
| 2006 | 23,270.10 |
| 2007 | 0.00 |

Tr. 105.   His total earnings during the period of 1988-2006 were $245,008.18.

Burda has not engaged in substantial gainful activity since May 31, 2006, the alleged

onset date.   Tr. 14.

Burda's alleged impairments are migraine headaches, fibromyalgia, irritable

bowel syndrome and obesity.   Doc. 14.

On February 20, 2008,   Burda protectively filed an application for disability

insurance benefits.   Tr. 99-103.   On August 27, 2008, the Bureau of Disability

Determination[5] denied Burda's application.   Tr. 78.   On September 24, 2008,

Burda requested a hearing before an administrative law judge.   Tr. 87-88.   A hearing

was held on November 20, 2009, approximately 14 months later.   Tr. 44-77.   On

December 18, 2009, the administrative law judge issued a decision denying Burda's

application for benefits.   Tr. 9-24.   On February 10, 2010, Burda filed a request for

review of the decision with the Appeals Council of the Social Security

Administration.   Tr. 6-8.   After approximately eight months had passed, on October

13, 2010, the Appeals Council concluded that there was no basis upon which to grant

Burda's request for review.   Tr. 1-5.   Thus, the administrative law judge's decision

stood as the final decision of the Commissioner.

On December 10, 2010, Burda filed a complaint in this court requesting that we

reverse the decision of the Commissioner denying him disability insurance benefits.

The Commissioner filed an answer to the complaint and a copy of the administrative

record on February 14, 2011.   Burda timely filed his brief on March 31, 2011.   The

---

5.   The Bureau of Disability Determination is an agency of the Commonwealth of
Pennsylvania which initially evaluates applications for disability insurance benefits
on behalf of the Social Security Administration.

Commissioner filed his opposing brief on May 2, 2011.   The appeal[6] became ripe for

disposition on May 16, 2011, when Burda filed a reply brief.

**STANDARD OF REVIEW:**

When considering a social security appeal, we have plenary review of all legal

issues decided by the Commissioner.   See Poulos v. Commissioner of Social

Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec.

Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858

(3d Cir. 1995).   However, our review of the Commissioner's findings of fact pursuant

to 42 U.S.C. § 405(g) is to determine whether those findings are supported by

"substantial evidence."   Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988);

Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).   Factual findings which are

supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v.

Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are

supported by substantial evidence, we are bound by those findings, even if we would

have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d

Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a

---

6.    Under the Local Rules of Court "[a] civil action brought to review a decision of
the Social Security Administration denying a claim for social security disability
benefits" is "adjudicated as an appeal."   M.D.Pa. Local Rule 83.40.1.

reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213.  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474,

7

488 (1971).   A single piece of evidence is not substantial evidence if the

Commissioner ignores countervailing evidence or fails to resolve a conflict created by

the evidence.   Mason, 994 F.2d at 1064.   The Commissioner must indicate which

evidence was accepted, which evidence was rejected, and the reasons for rejecting

certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.   Therefore,

a court reviewing the decision of the Commissioner must scrutinize the record as a

whole.   Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v.

Califano, 606 F.2d 403, 407 (3d Cir. 1979).

Another critical requirement is that the Commissioner adequately develop the

record. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ has an obligation

to develop the record in light of the non-adversarial nature of benefits proceedings,

regardless of whether the claimant is represented by counsel."); Rutherford v.

Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Fraction v. Bowen, 787 F.2d 451, 454 (8th

Cir. 1986); Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001); Smith v. Apfel, 231

F.3d 433. 437 (7th Cir. 2000);   see also Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080,

2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments

both for and against granting benefits[.]").   If the record is not adequately developed,

remand for further proceedings is appropriate.   Id.

## SEQUENTIAL EVALUATION PROCESS:

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.   For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance claims.   See 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92.   This process requires the Commissioner to consider, in sequence, whether a claimant (1) is

engaging in substantial gainful activity,[7] (2) has an impairment that is severe or a combination of impairments that is severe,[8] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[9] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.   As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[10]

---

7.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."   20 C.F.R. § 404.1510.

8.    The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.   Id.   If a claimant has any severe impairments, the evaluation process continues.   20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.   20 C.F.R. §§ 404.1523 and 440.1545(a)(2).

9.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled.   If not, the sequential evaluation process proceeds to the next step.

10.   If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.   See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).   The residual functional capacity assessment must include a discussion of the individual's abilities.   Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## DISCUSSION:

At the first step of the sequential evaluation process, the administrative law judge found that Burda had not engaged in substantial gainful activity since May 31, 2006, the alleged onset date.   Tr.   14.

At step two, the administrative law judge found that Burda has the following severe impairments: migraine headaches, fibromyalgia, irritable bowel syndrome ("IBS") and obesity.   Tr. 14.

At step three, the administrative law judge found that Burda's impairments did not individually, or in combination, meet or equal a listed impairment.   Tr.   15.

The administrative law judge found at step four that Burda is unable to perform any past relevant work, but has the residual functional capacity to perform

[s]edentary work as defined in 20 CFR 404.1567(a), meaning that he can lift and carry 10 pounds occasionally, 5 pounds frequently, sit between 6-8 hours out of an 8 hour day and stand for a maximum of 2 hours and would require the need to alternate between sitting and standing, additionally, the claimant could perform work that involves only simple, routine tasks, that does not require more than frequent use of the hands bilaterally, does not require ambulation over uneven terrain or prolonged standing or walking, and does not involve exposure to respiratory irritants such as odors, dust gasses, or fumes or work in poorly ventilated settings.

Tr. 15.

At step five, the administrative law judge found that there are jobs that exist in significant numbers in the national economy that Burda can perform. Tr. 19.

The administrative record in this case is 464 pages in length and we have thoroughly reviewed that record. Burda argues that the administrative law judge committed four errors. First, Burda argues that the finding that he has the residual functional capacity to perform sedentary work is not supported by substantial evidence. Second, Burda argues that the credibility finding made by the administrative law judge was an error, as Burda's subjective complaints of pain are supported by medical evidence. Third, Burda argues that the administrative law judge failed to consider his testimony that at previous jobs he had a history of absenteeism and often needed to leave work early. Finally, Burda argues that the summarization of activities of daily living was a selective one and erroneous.

Burda's first three arguments can be reduced to one point, that the administrative law judge did not address Burda's claims that he would need to be frequently absent from work due to his alleged impairments. Burda argues that the vocational expert had testified that one would not meet the criteria for competitive work if, in addition to his other limitations, he/she experienced frequent interruption of concentration and attention, joint pain, the need for unscheduled restroom breaks, and regular absenteeism.   Tr. 76.

Burda testified that when he was working, he would miss work at least three times a month, sometimes two to three times a week due to migraine headaches.   Tr. 50 and 66.   He testified that his migraine medications give him some, but not full relief.   Tr. 52.   He testified that he experiences daily headaches.   Tr. 72.   Burda testified that he experiences constant pain.   Tr. 72.   He also testified that he does not leave home often because of the pain he experiences in his legs.   Supp. Tr. 19.[11] Burda testified that eight years ago, while in the Navy, he weighed 210 pounds, and his weight increased to 250 pounds, went down to 220 pounds, and finally back up to 255 pounds.   Supp. Tr. 19.   Burda testified that he has trouble driving because he is

---

11.   References to "Supp. Tr.___" are to pages of the amended document filed by the Defendant on January 26, 2012.

tired and dizzy.   Tr. 61.   He testified that he experiences memory loss several times a month, and once he experienced it while driving, and his father-in-law had to pick him up.   Tr. 61-62.

A review of the medical records shows that Burda has been experiencing IBS, migraine headaches and fibromyalgia symptoms since at least 2001.   Tr. 448-449. On October 26, 2001, Burda completed a Medical Assessment Form, presumably for the Department of Veterans Affairs.   Id.   The form asked, "Since your last medical assessment/physical examination, have you had any illnesses or injuries that caused you to miss duty for longer than 3 days?"   Id.   Burda checked "yes," and wrote, "migrane h[ead] a[che] for longer than 4 days, seen by neurology was s/q [illegible] days, stomach pain due to ibs."   Id.   When asked "Since your last medical assessment/physical examination, have you been seen by or been treated by a health care provider, admitted to a hospital, or had surgery?"   Id.   Burda checked "yes," and wrote, "[illegible] for fibromyalgia."   Id.   When asked "Do you have any conditions which currently limit your ability to work in your primary military specialty or require geographic or assignment limitations?"   Id.   Burda checked "yes," and wrote "tingling in hands, I have difficulty holding objects such as screwdriver, with working on electrical equipment I [illegible] myself or co-workers if I would drop metal object in the unit while [illegible] and fix equipment, stairs and

14

ladders."   Id.

Burda's physician at the VA clinic, Justin Thomas, M.D., noted that Burda gets

2-3 migraine attacks per month.   Tr. 172, 174, 182, 305, 312, 380 and 412.   Dr.

Thomas also wrote that Burda's fibromyalgia symptoms are controlled with as needed

use of ibuprofen, Tylenol, Lyrica[12] (replaced with Gabapentin[13]), and Darvocet[14].

Tr. 172, 174-175, 182, 305, 312, 380 and 412.    Dr. Thomas also wrote that Burda

takes Donnatal for pain from IBS.   Tr. 172, 175, 182, 305, 312, 380 and 412.

---

12.   Lyrica (Pregabalin) is used to relieve neuropathic pain. . . It is also used to treat
fibromyalgia (a long-lasting condition that may cause pain, muscle stiffness and
tenderness, tiredness, and difficulty falling asleep or staying asleep). Pregabalin is in a
class of medications called anticonvulsants. It works by decreasing the number of
pain signals that are sent out by damaged nerves in the body.
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000327/ (Last accessed February
14, 2012).
13.   Gabapentin capsules, tablets, and oral solution are used to help control certain
types of seizures in people who have epilepsy. Gabapentin capsules, tablets, and oral
solution are also used to relieve the pain of postherpetic neuralgia (PHN; the burning,
stabbing pain or aches that may last for months or years after an attack of shingles).
Gabapentin is in a class of medications called anticonvulsants. Gabapentin relieves
the pain of PHN by changing the way the body senses pain.
http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000940/ (Last accessed February
14, 2012).
14.   Darvocet contains a combination of propoxyphene and acetaminophen.
Propoxyphene is in a group of drugs called narcotic pain relievers. Acetaminophen is
a less potent pain reliever and a fever reducer that increases the effects of
propoxyphene. Darvocet is used to relieve mild to moderate pain with or without
fever.   Darvocet (acetaminophen and propoxyphene) was withdrawn from the U.S.
market in November 2010.
http://www.drugs.com/darvocet.html (Last accessed February 14, 2012).

On June 26, 2006, Burda saw Toni Jo Parmelee, D.O.,who performed a

consultative exam and wrote a Consultative Examination Report & Medical Source

Statement Form.   Tr. 194-198.   Dr. Parmelee wrote Burda's history as the

following:   "In the Navy, medical corpsman."   Tr. 195.   "Was in school Jan

2000-Oct 2000 for biomedical technician, then was transferred to Portsmouth, worked

as biomed technician, health got worse, more doctor's appts, was discharged from the

service in 2003, medical discharge."   Id.   "2003 out of work then employed at

Easton Hospital, Biomed, worked until June 2006, left because hospital changed

contractors, his company was out, was not hired by the new contractors."   Id.   "Last

employed: May 31, 2006, cannot find another job when he tells the employers his

medical history and need to leave work."   Id.   "Medications: Donnatal 2 tablets

BID, trazodone 100 mg 1 HS, Zantac 150 mg 1 at supper, Maxalt 1 prn headache, 2 or

3 times per week, Motrin 800 mg BID/TID, Tylenol with Codeine # 3 300 mg-30 mg

1 tab(s) QID."   Tr. 195.   On the Medical Source Statement form, Dr. Parmelee

wrote: Lifting, occasionally up to 20 pounds.   Tr. 197.   Carrying, occasionally up to

20 pounds.   Id.   Standing and walking 1-2 hours cumulative in an 8-hour day.   Id.

Sitting 8 hours with alternating sit/stand at his option.   Id.   Pushing and pulling

unlimited.   Id.   Only occasional bending, kneeling, stooping and crouching.   Tr.

198.   Never balance or climb.   Id.   No heights.   Id.

16

On August 13, 2008, Louis Tedesco, M.D. completed a Physical Residual Functional Capacity Assessment form about Burda's abilities.   Tr. 199-205.   Dr. Tedesco wrote that Burda's statements regarding his symptoms and their effects are partially credible, as they are consistent with the medical evidence.   Tr. 204.   Dr. Tedesco also wrote that he believed Dr. Parmelee's assessment to be an overestimate of the severity of Burda's limitations.   Tr. 204.

On June 22, 2009, Burda saw John Feerick, M.D., a neurologist.   Tr. 262-263 Dr. Feerick wrote: "[p]rimary neurologic complaint is migraine headaches which he gets essentially on a daily basis, tending to occur in the morning."   Tr. 262.   "If he does not take Maxalt they can last all day."   Id.   "If he does, the headaches tend to decrease within an hour and a half or so." Id.   "The patient gets a "floater" in the visual fields as part of his aura."   Id.   "The patient gets some nausea with his headaches, but he does not usually vomit."   Id.   "The patient usually develops photophobia, also."   Id.     "Medications which did not work included Lyrica, Gabapentin, Meclomen which also produced allergy symptoms, Wellbutrin and Zoloft."   Tr. 263.   "His headaches are daily in occurrence with one and a half hours after medication, and all day without."   Tr. 263.

The administrative law judge did not address Burda's claims of absenteeism, other than to write one sentence referencing Burda's testimony that he would miss

17

work up to three times per week due to migraines and pain from fibromyalgia.   Tr.
16.   Because the amount of absenteeism claimed by Burda, if found to be credible,
would result in a grant of benefits, the administrative law judge must analyze the
claims of absenteeism and determine if the claims are credible and supported by the
medical records.   Because the administrative law judge did not address this claim
whatsoever, his decision, as it stands now, is not supported by substantial evidence.
As a result, we will remand for reconsideration on this basis.

Burda's final argument is that the administrative law judge selectively
summarized Burda's activities of daily living.   Because we are remanding the case to
the Commissioner (who we expect will remand it to the administrative law judge) on
the aforementioned basis, we suggest that the administrative law judge be sure to
evaluate all the evidence regarding activities of daily living.

## CONCLUSION:

Our review of the administrative record reveals that the decision of the
Commissioner is not supported by substantial evidence.   We will, therefore, pursuant
to 42 U.S.C. § 405(g), reverse the decision of the Commissioner denying Burda
disability insurance benefits, and remand the case to the Commissioner.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY P. BURDA | : | |
| | : | |
| Plaintiff | : | No. 4:10-CV-2521 |
| | : | |
| vs. | : | (Complaint Filed 12/10/10) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL | : | (Judge Kosik) |
| SECURITY, | : | |
| | : | |
| Defendant | : | |

## **ORDER**

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of Rodney P. Burda

and against the Commissioner as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying

Rodney P. Burda disability insurance benefits is vacated and the case remanded to the

Commissioner of Social Security to fully develop the record, and appropriately

evaluate the claims of absenteeism in accordance with the accompanying

memorandum.

19

    3.   The Clerk of Court shall close this case.

Edwin M. Kosik
United States District Judge

Dated: February 21, 2012